UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

STEVEN R. WHITSETT,

                    Plaintiff,

v.                                         Case No. 3:14-cv-813-J-34JBT

TIMOTHY CANNON,
et al.,

                    Defendants.
_____

<u>**ORDER**</u>

**THIS CAUSE** is before the Court on Defendants Parrish and Polk's Motion to Dismiss Plaintiff's Fourth Amended Complaint (Doc. #28; Motion) filed on January 20, 2015.  Plaintiff filed a response to the Motion on February 9, 2015.  <u>See</u> Plaintiff's Reply to Defendants Parrish [sic] Polk's Motion to Dismiss Plaintiff's Fourth Amended Complaint (Doc. #29; Response).  Accordingly, the Motion is ripe for review.

I.   **Background Facts**[1]

Plaintiff Steven R. Whitsett (Whitsett), proceeding pro se, alleges that, while an inmate at Columbia Correctional Institution (CCI), he has been improperly designated as a "violent potential predator," transferred to more restrictive housing with violent inmates, and deprived of numerous privileges. See Fourth Amended Complaint (Doc. #27; FAC) ¶¶ 10-42.[2]   Whitsett asserts that Defendants J.A. Parrish and Randall Polk have violated his right to due process under 42 U.S.C. § 1983, as guaranteed by Article I, Section 9 of the Florida Constitution and the Fourteenth Amendment to the United States Constitution, by designating him a potential predator without prior notice or an opportunity to defend (Count I) and by doing so based on a 1995 conviction for lewd assault in violation of department policy (Count Two).   Id. at 8-9.

Whitsett provides the following factual background for his claims.   In 1995, Whitsett was convicted of lewd assault, and the state court sentenced him to 8 years of incarceration.   Id. ¶ 1.

_____

[1] In considering the Motion, the Court must accept all factual allegations in the Fourth Amended Complaint (Doc. #27) as true, consider the allegations in the light most favorable to the plaintiff, and accept all reasonable inferences that can be drawn from such allegations.   Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003); Jackson v. Okaloosa Cnty., Fla., 21 F.3d 1531, 1534 (11th Cir. 1994).   As such, the facts recited here are drawn from the FAC, and may well differ from those that ultimately can be proved.

[2] The Court will refer to the exhibits appended to Whitsett's FAC as "Ex."

After completing his term of incarceration in 1999, Whitsett continued to be detained in a civilian mental health facility from which he escaped on June 5, 2000. Id. ¶¶ 3-4. Authorities captured Whitsett the next day, charged and convicted him of armed escape, and later sentenced Whitsett to twenty years of imprisonment. Id. ¶¶ 5-7. In 2010, authorities transferred Whitsett to CCI, and on February 8, 2013, relocated him to a high security housing dorm with "particularly violent prisoners." Id. ¶¶ 9-10. "[A]cting on a rumor," Whitsett requested information regarding his inmate classification. Id. ¶ 11. In response, J. Waters, a classification officer, advised Whitsett that on February 4, 2013 the Institutional Classification Team had designated him as a "potential violent predator" (PVP) based on his 1995 conviction for lewd assault, pursuant to an interim policy explained in a department Memorandum. Id. ¶¶ 11-14, 18; see Exs. A, B, C, D (Memorandum). Whitsett contends that the Inmate Classification Team included Defendants Polk and Parrish. Id. at ¶ 14. He further asserts that these Defendants failed to give him notice, an opportunity to appear, or an opportunity to challenge his designation. Id. ¶¶ 15-17. Whitsett also alleges that the department policy only allowed a PVP designation based on actions that occurred within the correctional system during the current term of incarceration, not for prior actions that occurred outside

the correctional system, such as his 1995 lewd assault.  Id. ¶ 21;
see generally, Memorandum.[3]

     In support of his claims, Whitsett provides a copy of a
Memorandum, dated January 18, 2013, sent by Timothy H. Cannon, then
the Assistant Secretary of Institutions, Florida Department of
Corrections (FDOC),[4] to Regional Directors and Wardens with the
subject, "Potential Predator Identification List (Pre-iBAS/SRI
Initiatives)."  See id. at 1.  The Memorandum describes an interim
process for FDOC "to identify certain predators or potential
predators" with the goal of reducing in-cell violence between
inmates.  Id.  The Memorandum provides a high-level description of
a report analyzing a variety of factors, including the two
classifications described below, to be used "to ensure appropriate
inmate housing assignments."  Id. at 2.  During assessments,
classification officers are directed to check a box in the central
database if the inmate meets one of two criteria: (1) commission of
a murder in prison (MIP), for which inmates will be deemed a

_____

     [3] There was some confusion regarding Whitsett's
classification.  Cf. Exs. A, B, C, I, K, L (explaining Whitsett had
been classified a potential predator by the Central Office) with
Exs. H, N, O (mistakenly confirming Whitsett had no such
classification).  In their Motion, Defendants explain that
Whitsett's designation was initially maintained only in the Central
Office database, but was not kept in his institutional
classification file, which explains why certain CCI officers did
not have immediate access and provided incorrect information.
Motion ¶ 12.

     [4] Mr. Cannon is now the Deputy Secretary of FDOC.

predator; or (2) currently incarcerated for a violent felony commission (VFC), for which inmates will be deemed a PVP. Id. For the second category, in which Whitsett has been classified, the Memorandum states that

> an inmate's entire record should be taken into consideration, including the number of violent disciplinary reports and their circumstances, and/or the nature and circumstances of the violent felony conviction, the inmate's arrest record including the presence of any sex convictions, overall institutional adjustments, prior negative transfers, contacts, length of sentence, size, stature and any other information about the inmate known by staff not available in the database.

Id. at 3. The Memorandum states that inmates with the MIP flag, "to the extent possible, SHOULD NOT be housed with inmates who are not identified as such[,]" id. at 2 (emphasis original), but provides no such proscription for inmates deemed PVPs, such as Whitsett.

Whitsett also provides an email from Terri Gilliam, State Classification Officer, Bureau of Classification Management, explaining that

> to qualify for the VFC flag he or she must have committed the violent felony and received a conviction for the violent felony during his or her current incarceration. This includes convictions for offenses while the inmate is out of [FDOC's] custody but still actively serving his or her sentence ... .

FAC, Ex. J. Whitsett attaches his inmate requests, informal and formal grievances, and corresponding FDOC responses regarding his

classification and change in housing, documenting his attempts to determine his status and address his concerns internally.  See id. Exs. A, B, C, E, F, G, H, I, K, L, M, N, O.

As a result of his VFC classification and PVP designation, Whitsett alleges that he has endured a "significant and atypical hardship."  Id. at 8.  Specifically, he alleges that he

> was placed in a "high risk" housing unit at [CCI ...] with other prisoners designated potential predators[;] has had restrictions placed on [his] housing, bunk, work, education and vocation assignments which prevent him from participating in rehabilitation programs necessary for his re-entry into society in early 2016[;] suffers from the stigma of being viewed as a sexual predator by staff and other prisoners [resulting in] sexual harassment and threats of sexual violence[; and] suffers mental anguish from being designated a potential predator [although] a civil jury returned a verdict on April 4, 2001, finding him to not be a predator.

Id. ¶¶ 43-47 (emphasis original).  For relief, Whitsett seeks (1) a declaratory judgment stating Whitsett's PVP designation without notice, hearing, or proper qualification violated his due process rights; (2) an award of costs against Defendants; (3) a permanent injunction directing Defendants to remove Whitsett's designation from his institutional classification file; (4) an award of nominal damages; and (5) such other relief as he may be entitled.  Id. at 9-10.

In their Motion, Defendants seek dismissal of Whitsett's claims in their entirety.  See generally Motion.  Specifically,

- 6 -

Defendants argue that Whitsett's claims should be dismissed because he has not alleged a loss of any cognizable liberty interest, and, thus, fails to state a claim.  See Motion at 4-9.  Defendants contend that there can be no stigma creating a liberty interest based on designating Whitsett as a PVP because he has a prior conviction for lewd assault.  Id. at 5-6.  In doing so, Defendants distinguish Kirby v. Siegelman, 195 F.3d 1285 (11th Cir. 1999), in which the Eleventh Circuit found a liberty interest implicated by labeling an inmate as a sexual predator where the inmate had not been convicted of a sex crime and the classification restricted his housing, took away privileges, and required attendance at therapy sessions.  See Motion at 5.  Defendants argue that unlike in Kirby, Whitsett has been convicted of a sex crime and, here, no participation in therapy or treatment programs is required.  Id. at 6.

Defendants also argue that Whitsett's designation is made under the FDOC's general authority to maintain order that includes broad discretion in housing classification.  Id. at 6-7 (citing Fla. Stat. §§ 944.17(7), 945.025(1)).  Indeed, they assert that the housing restrictions about which Whitsett complains are similar to those imposed on other inmates in administrative and disciplinary confinements[5] or those placed in close management and which have

---

[5] Pursuant to Rules 33-602.220(1)(a), (5); 33-602.222(1)(f), (4); 33-601.800(1)(d), (e), Fla. Admin. Code.

been held not to implicate the Due Process Clause. Id. at 7 n.1 (citing Sandin v. Conner, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995)). Defendants also argue that Whitsett has no constitutional right to vocational, rehabilitative, or educational programs. Id. at 8. Thus, Defendants contend that because the PVP designation implicates no constitutional rights, even if the policy stated in the Memorandum was misapplied, Whitsett has no cause of action. Id. at 8-9.

In his Response, Whitsett argues that, even if the conditions of his confinement did not implicate a liberty interest, which he disputes, his placement in segregation implicates a liberty interest requiring due process under Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). Response at 1-4. Whitsett contends that, just as with disciplinary confinement or close management, which require due process through formal rules providing notice and hearing, his segregation implicates a liberty interest that also requires due process. Id. at 3-4. He notes that, after he began filing grievances related to the lack of process, in September 2013, prison authorities implemented procedures to provide notice and hearings for other prisoners subsequently reviewed for MIP or VFC designations. Id. at 4. Whitsett argues that this is a tacit admission that a liberty interest is implicated in his designation. Id.

Whitsett further argues that, since prisoners in disciplinary segregation have a liberty interest in outdoor recreation privileges under the standard announced in Sandin, 515 U.S. 472, 115 S.Ct. 2293, he must have a similar liberty interest in access to some rehabilitative programs, which have been banned outright for his indefinite[6] segregation, especially in light of his upcoming release. Id. at 4-6 (citing Bass v. Perrin, 170 F.3d 1312 (11th Cir. 1999). Whitsett acknowledges that he does not have a liberty interest in any specific program assignment, but responds that a blanket ban on all assignments is an atypical and significant hardship, especially in his situation so close to release where such a ban contradicts FDOC's statutory goal to rehabilitate offenders. Id. at 5. Whitsett also notes that on at least two occasions the Second Circuit Court of Appeals has held that extended administrative segregation, in both cases shorter than his, implicate a liberty interest. Id. at 6 (citing Giano v. Selsky, 238 F.3d 223 (2d Cir. 2001) (762 days); Colon v. Howard, 215 F.3d 227 (2d Cir. 2000) (305 days)).

Finally, Whitsett contends that his designation as a PVP is akin to a designation as a sexual predator, thus requiring due process. Id. a 6-10. He asserts that, as in Kirby, he should not

---

[6] In the Response, filed February 9, 2015, Plaintiff states that he has been in segregation as a potential predator for 720 days. Thus, as of this writing, Plaintiff has been in segregation for over two and one-half years.

be labeled a "violent predator" without process because he has not been convicted of a violent felony. Id. at 7-8. Whitsett compares his classification to that of a sexual predator and cites state court decisions requiring due process for such a classification. Id. at 8-9. As a result of his PVP classification, Whitsett contends that he has been stigmatized and sexually harassed by guards and inmates, thus further implicating a liberty interest. Id. at 9-10.

## II. Standard of Review

In ruling on a motion to dismiss, brought pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure (Rule(s)), the Court must accept the factual allegations set forth in the complaint as true. See Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d (2009); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1, 122 S.Ct. 992, 995 n.1 (2002); see also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. See Omar ex. rel. Cannon v. Lindsey, 334 F.3d 1246, 1247 (11th Cir. 2003) (per curiam). Nonetheless, the plaintiff must still meet some minimal pleading requirements. Jackson v. Bellsouth Telecomm., 372 F.3d 1250, 1262-63 (11th Cir. 2004) (citations omitted). Indeed, while "[s]pecific facts are not necessary[,]" the complaint should "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'"

Erickson v. Pardus, 551 U.S. 89, 93, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) (per curiam) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Further, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570, 127 S.Ct. at 1974, 167 L.Ed.2d 929. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949 (citing Twombly, 550 U.S. at 556, 127 S.Ct. 1955).

A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555, 127 S.Ct. at 1964-65 (internal quotations omitted); see also Jackson, 372 F.3d at 1262 (explaining that "[c]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (internal citation and quotations omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," which simply "are not entitled to [an] assumption of truth." See Iqbal, 556 U.S. at 679, 129 S.Ct. at 1950. Thus, in ruling on a motion to dismiss, the Court must determine whether the FAC contains "sufficient factual matter, accepted as true, to

'state a claim to relief that is plausible on its face.'" Id. at 678 (quoting Twombly, 550 U.S. at 570, 127 S.Ct. 1955).[7]

## III. Discussion

"[S]ection 1983 provides individuals with a federal remedy for the deprivation of rights, privileges, or immunities protected by the Constitution or the laws of the United States that are committed under color of state law." Brown v. City of Huntsville, Ala., 608 F.3d 724, 733 n.12 (11th Cir. 2010) (citation omitted); see 42 U.S.C. § 1983.  Thus, to state a claim for relief under § 1983, a plaintiff must sufficiently allege that he or she was "deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law."  See Focus on the Family v. Pinellas Suncoast Transit Auth., 344 F.3d 1263, 1276-77 (11th Cir. 2003) (quotation

---

[7] Prior to Iqbal, Eleventh Circuit precedent instructed that a heightened pleading standard applied in § 1983 actions where "the defendants are individuals who may seek qualified immunity."  See Amnesty Int'l, USA v. Battle, 559 F.3d 1170, 1179 (11th Cir. 2009). However, in Randall v. Scott, 610 F.3d 701 (11th Cir. 2010), the Eleventh Circuit determined that "[a]fter Iqbal it is clear that there is no 'heightened pleading standard' as it relates to cases governed by Rule 8(a)(2), including civil rights complaints."  See Randall, 610 F.3d at 707-10.  In light of this Eleventh Circuit precedent and because Defendants do not assert that the heightened pleading standard applies, the Court will apply the standard of review set forth in Twombly and Iqbal.  Id. at 710; see also Nettles v. City of Leesburg Police Dep't, 415 F. App'x 116, 120-21 (11th Cir. 2010) (unpublished); but see Harper v. Lawrence Cnty., Ala., 592 F.3d 1227, 1233 (11th Cir. 2010) (applying the heightened pleading standard post-Iqbal); Keeting v. City of Miami, 598 F.3d 753, 762-63 (11th Cir. 2010) (same).

omitted).  Here, Whitsett alleges that Defendants have violated his Fourteenth Amendment rights by designating him as a PVP without prior notice or an opportunity to defend based on a 1995 conviction in violation of department policy and that such designation results in atypical and significant hardships to his confinement.

**A.    Due Process Analysis Under <u>Sandin</u>**

Courts "examine procedural due process questions in two steps; the first asks whether there exists a liberty or property interest that has been interfered with by the state[;] the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." <u>Kentucky Dep't of Corr. v. Thompson</u>, 490 U.S. 454, 460, 109 S.Ct. 1904, 1908, 104 L.Ed.2d 506 (1989); <u>see also Wilkinson v. Austin</u>, 545 U.S. 209, 221-22, 125 S.Ct. 2384, 2393, 162 L.Ed.2d 174 (2005).  Liberty interests may arise from either the Due Process Clause or state law. <u>Meachum v. Fano</u>, 427 U.S. 215, 225-27, 96 S.Ct. 2532, 2538-39, 49 L.Ed.2d 451 (1976). In reviewing whether state law creates a liberty interest, the Supreme Court has directed that courts must focus on the nature of the deprivation at issue rather than a search for a negative implication from mandatory language in prisoner regulations.

Sandin, 515 U.S. at 483-84, 115 S.Ct. at 2300.[8]  Looking at the nature of the deprivation, the Sandin Court explained that state created liberty interests rising to the level of requiring Due Process protection generally will be limited to "freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to a Due Process violation of its own force nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Sandin, 515 U.S. at 484, 115 S.Ct. at 2300 (internal citations omitted).

Notably, in the wake of Sandin, courts have reached inconsistent conclusions regarding what constitutes an "atypical and significant hardship" or how to determine the baseline of the

_____

[8]  In Sandin, the Supreme Court abrogated its prior methodology, in part, because federal courts had become too involved in the day-to-day management of prisons.  Sandin, 515 U.S. at 482-83, 115 S.Ct. at 2299-2300 (citing Klos v. Haskell, 48 F.3d 81, 82 (2d Cir. 1995) (claiming liberty interest in right to participate in "shock program" – a type of boot camp for inmates); Segal v. Biller, 39 F.3d 1188, *1-2 (9th Cir. 1994) (unpublished) (claiming liberty interest in a waiver of the travel limit imposed on prison furloughs); Burgin v. Nix, 899 F.2d 733, 735 (8th Cir. 1990) (claiming liberty interest in receiving a tray lunch rather than a sack lunch); Spruytte v. Walters, 753 F.2d 498, 506-08 (6th Cir. 1985) (finding liberty interest in receiving a paperback dictionary due to a rule that states a prisoner "'may receive any book ... which does not present a threat to the order or security of the institution'") (citation omitted); Lyon v. Farrier, 727 F.2d 766, 768-69 (8th Cir. 1984) (claiming liberty interest in freedom from transfer to a smaller cell without electrical outlets for televisions and liberty interest in a prison job); United States v. Michigan, 680 F.Supp. 270, 277 (W.D. Mich. 1988) (finding liberty interest in not being placed on food loaf diet).

"ordinary incidents of prison life."[9] Wilkinson, 545 U.S. at 223;
125 S.Ct. at 2394 (describing the difficulty in comparing different
Circuits' approaches in Beverati v. Smith, 120 F.3d 500, 504 (4th
Cir. 1997), and Keenan v. Hall, 83 F.3d 1083, 1089 (9th Cir. 1996),
with Hatch v. District of Columbia, 184 F.3d 846, 847 (D.C. Cir.
1999); also citing Wagner v. Hanks, 128 F.3d 1173, 1177 (7th Cir.
1997)).  In 2005, the Supreme Court revisited the issue of a
prisoner's liberty interest in the context of a change in custodial
conditions.  Wilkinson, 545 U.S. 209, 125 S.Ct. 2384, 162 L.Ed.2d
174.  Although the Supreme Court had previously held that the
Constitution does not give rise to a liberty interest in avoiding
transfer to more adverse conditions of confinement, see Meachum,
427 U.S. at 225, 96 S.Ct. at 2538, the Wilkinson Court held that a
transfer to a supermax facility did implicate a liberty interest
under state law.  Wilkinson, 545 U.S. at 223-24; 125 S.Ct. at 2394-
95.  The Supreme Court reasoned that, taken together, the
conditions at the supermax facility were so extreme, almost all
human contact is prohibited for the duration of the sentence, no
conversation among cells is allowed, the lights in cells are
constantly on, exercise is limited to one hour per day in a small

---

[9]  As Justice Ginsburg noted in her dissent, "[t]he Court
ventures no examples, leaving consumers of the Court's work at sea,
unable to fathom what would constitute an 'atypical and significant
deprivation, ... and yet not trigger protection under the Due
Process Clause directly." Sandin, 515 U.S. at 490 n.2; 115 S.Ct.
at 2303 n.2 (Ginsburg, J., dissenting).

indoor room, only annual reviews occur, and otherwise eligible inmates are disqualified for parole consideration, that regardless of how the baseline was defined, the restrictions imposed an atypical and significant hardship. _Id._ Thus, a liberty interest was implicated. _Id._

Consistent with _Sandin_ and _Wilkinson_, the Eleventh Circuit has recognized that a prisoner can be deprived of his liberty in violation of due process in two ways:

> The first is when a change in a prisoner's confinement is so severe that it essentially exceeds the sentence imposed by the court. _See_ _Sandin v. Conner_, 515 U.S. 472, 484, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995); _see_ _e.g.,_ _Vitek v. Jones_, 445 U.S. 480, 492-93, 100 S.Ct. 1254, 1263-64, 63 L.Ed.2d 552 (1980) (holding that a prisoner is entitled to due process prior to being transferred to a mental hospital). The second is when the state has consistently given a certain benefit to prisoners (for instance, via statute or administrative policy), and the deprivation of that benefit "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." _Sandin_, 515 U.S. at 484, 115 S.Ct. at 2300; _see,_ _e.g.,_ _Wolff v. McDonnell_, 418 U.S. 539, 558, 94 S.Ct. 2963, 2976, 41 L.Ed.2d 935 (1974) (prisoners may not be deprived of statutory "good-time credits" without due process); _cf._ _Dudley v. Stewart_, 724 F.2d 1493, 1497-98 (11th Cir. 1984) (explaining how the state creates liberty interests). In the first situation, the liberty interest exists apart from the state; in the second situation, the liberty interest is created by the state.

_Bass_, 170 F.3d at 1318 (footnote omitted); _see_ _also_ _Magluta v. Samples_, 375 F.3d 1269, 1282 (11th Cir. 2004) (recognizing a "new

<u>Sandin</u> standard," under which there is "no liberty interest and no constitutional violation ... if the <u>Sandin</u> 'atypical and significant hardship' standard [is] not met."). Applying this standard, in <u>Bass</u>, the Eleventh Circuit considered a provision of the Florida Administrative Code which provided for two hours of "yard time" for prisoners in close management absent clear and compelling reasons to do otherwise. <u>Bass</u>, 170 F.3d at 1318. Finding that prisoners had a state created interest in yard time, the court concluded that the deprivation of yard time imposed "enough of a hardship to qualify as a constitutionally protected liberty interest." <u>Id.</u> at 1318. Although the prisoners were deprived of only two hours of yard time, the court found the marginal value of those two hours to be substantial to one in close management. <u>Id.</u>  As such, the deprivation of those two hours constituted an atypical and significant hardship warranting due process protection. <u>Id.</u>

While the various courts of appeal continue to differ in their approach to determining what constitutes an "atypical and significant hardship" and where to look to determine the baseline of the "ordinary incidents of prison life," what is evident is that the ultimate determination of whether a liberty interest is

implicated requires a fact intensive inquiry.[10]  At least at the pleading stage, it appears that courts in this Circuit endeavor to determine whether the deprivation alleged is atypical and significant when compared with the conditions experienced by the general population.  See Magluta, 375 F.3d at 1282-83 (holding that allegations of solitary confinement in a tight space for over 500 days was sufficient to state an atypical and significant hardship when compared to the expectations of a pre-trial detainee); Bass, 170 F.3d at 1318 (a deprivation of two hours per week of yard time

_____

[10] Cf., e.g., Sealey v. Giltner, 197 F.3d 578, 589 (2d Cir. 1999) (101 day administrative segregation was not atypical and did not amount to significant hardship in relation to the ordinary incidents of prison life); Frazier v. Coughlin, 81 F.3d 313, 317 (2d Cir. 1996) (neither 12 day solitary confinement nor 11 month close supervision confinement were dramatically different from conditions of general confinement); Griffin v. Vaughn, 112 F.3d 703 (3d Cir. 1997) (15 month administrative custody was not deprivation of liberty); Beverati, 120 F.3d 500 (six month administrative confinement was not a deprivation of liberty when compared to conditions imposed on the general population); Pichardo v. Kinker, 73 F.3d 612, 612-13 (5th Cir. 1996) (under Sandin, absent extraordinary circumstances, administrative segregation does not work a deprivation of liberty); Jones v. Baker, 155 F.3d 810 (6th Cir. 1998) (two and one half year administrative segregation during the investigation of riot and prisoner's implication in killing of prison guard was not atypical and significant hardship); Selby v. Caruso, 734 F.3d 554, 559 (6th Cir. 2013) (confinement in administrative segregation for nearly 13 years is deprivation of liberty); Hatch, 184 F.3d at 851 (analyzing the various different approaches taken by Circuit Courts to determine whether a prisoner suffered atypical and significant hardship in relation to the ordinary incidents of prison life before holding that "due process is required when segregative confinement imposes an 'atypical and significant hardship' on an inmate in relation to the most restrictive conditions that prison officials, exercising their administrative authority to ensure institutional safety and good order, routinely impose on inmates serving similar sentences.").

implicates a liberty interest for a prisoner in close management); Wallace v. Hamrick, 229 F. App'x 827, 830 (11th Cir. 2007) (unpublished) (denying motion to dismiss because allegations of twenty-eight day administrative segregation with no hot water, no ventilation, no opportunity to exercise, and without timely medical care, in violation of Georgia Department of Corrections policy, might be sufficient to establish a state created liberty interest when compared to the conditions of other inmates); Spaulding v. Woodall, 551 F. App'x 984, 987 (11th Cir. 2014) (unpublished) (finding inappropriate to dismiss prisoner's complaint where he alleged a liberty interest in his atypical segregation compared to the general prison population and stigmatization of branding as a sex offender).

## B.   Whitsett's Allegation of a Liberty Interest

Whitsett alleges that he was unaware of his initial classification or any review, which he was told occurred on a Sunday, that he was excluded from both decisions, and was only informed after the fact. FAC Exs. K, L, M. Whitsett contends that his liberty interests are implicated by (1) his indefinite[11] confinement as a PVP in a "high risk" housing unit at CCI with other prisoners designated as PVPs; (2) restrictions on his housing, bunk, work, education and vocation assignments which

---

[11] Over 950 days have elapsed.

- 19 -

prevent his access to rehabilitation programs; (3) the stigma of being viewed as a sexual predator by staff and other prisoners; and (4) a lack of any notice or review restricting any opportunity to object to or defend against the ICT's decision.  FAC at 8, ¶¶ 43-46.

As explained in <u>Sandin</u>, a liberty interest may exist either under the Due Process Clause or as created by a state, however, the focus should be on the nature of the deprivation itself rather than wrestling "with the language of intricate, often rather routine, prison guidelines to determine whether mandatory language and substantive predicates created an enforceable expectation that the State would produce a particular outcome with respect to the prisoner's conditions of confinement." <u>Sandin</u>, 515 U.S. at 480-81, 115 S.Ct. at 2298.  Thus, whether the State properly applied the policy outlined in the Memorandum, or any other implementing procedures, is less important than the nature of the deprivation and its effect on the conditions of Whitsett's confinement because the Memorandum does not appear to create any liberty interest but rather describes an interim classification procedure.  Instead, the Court must determine whether Whitsett's alleged change in confinement and classification deprive him of a liberty interest protected either by the Due Process Clause of its own force, or by some other state-created liberty interest.

Defendants argue that Whitsett's designation does not implicate a liberty interest. Initially, the Court notes that the Supreme Court has determined that administrative confinement for short periods of time does not implicate a liberty interest under the Due Process Clause. <u>Sandin</u>, 515 U.S. at 485-87, 115 S.Ct. at 2301-02 (thirty days); <u>Rodgers v. Singletary</u>, 142 F.3d 1252, 1253 (11th Cir. 1998) (two months). Also, a transfer to a more restrictive prison with less rehabilitative programs does not typically implicate a liberty interest under the Due Process Clause. <u>Meachum</u>, 427 U.S. at 223-25, 96 S.Ct. at 2538; <u>Moody v. Daggett</u>, 429 U.S. 78, 88 n.9, 97 S.Ct. 274, 279 n.9, 50 L.Ed.2d 236 (1976) (holding there is no constitutional entitlement to prison rehabilitative programs or to particular custody classifications under the Due Process Clause); <u>Montanye v. Haymes</u>, 427 U.S. 236, 242, 96 S.Ct. 2543, 2547, 49 L.Ed.2d 466 (1976). Thus, Whitsett's administrative confinement and exclusion from rehabilitative programs do not of themselves implicate a liberty interest under the Due Process Clause on this basis.

In other Due Process cases, courts have inquired whether such a designation is a typical, day-to-day, administrative classification, or amounts to an effective "branding," as courts have recognized in terms such as "sexual offender" and "mental illness," at least when such designation also requires counseling and denial of privileges. <u>See</u> <u>Kirby</u>, 195 F.3d at 1290-92 (citing

- 21 -

<u>Vitek</u>, 445 U.S. at 483-86, 100 S.Ct. at 1259-60); <u>Kramer v. Donald</u>, 286 F. App'x 674 (11th Cir. 2008) (unpublished) (denying claim because prisoner was only required to attend counseling, not branded with any offensive term).  Indeed, in both <u>Kirby</u> and <u>Vitek</u>, courts found that a stigmatization, more restrictive confinement, and compelled treatment, taken together, implicated a liberty interest under the Due Process Clause.  However, while Whitsett has alleged a stigmatization and more restrictive confinement, as in <u>Kirby</u> and <u>Vitek</u>, he has not alleged any compelled treatment. Viewing Whitsett's allegations in the light most favorable to him, Whitsett fails to allege a restraint that exceeds his sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force.  Nevertheless, Whitsett alleges violations of liberty interests connected with his administrative segregation, which may instead arise under state law.

"[T]he touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of the regulations regarding those conditions but the nature of those conditions themselves 'in relation to the ordinary incidents of prison life.'" <u>Wilkinson</u>, 545 U.S. at 223, 125 S.Ct. at 2394 (quoting <u>Sandin</u>, 515 U.S. at 484, 115 S.Ct. at 2300).  The Court notes that in <u>Sandin</u>, where the Court held that a thirty day disciplinary segregation did not present an atypical and significant deprivation by the state,

the Court did so on a motion for summary judgment. 515 U.S. at 486, 115 S.Ct. at 2301. The Court first compared evidence of the treatment of inmates in disciplinary segregation, administrative segregation, and the general population to find that (1) the administrative segregation "mirrored those conditions" in disciplinary segregation, and (2) the thirty day confinement "did not work a major disruption in his environment[,]" before determining that no liberty interest was implicated. Id.

Indeed, much of the Eleventh Circuit and Supreme Court authorities determining the existence of state created liberty interests compare such evidence on summary judgment or at trial, rather than at the pleading stage, as in the instant case. See Sandin, 515 U.S. 472, 115 S.Ct. 2293; Wilkinson, 545 U.S. 209, 125 S.Ct. 2384; Wolff, 418 U.S. 539, 94 S.Ct. 2963; Bass, 170 F.3d 1312; Rodgers, 142 F.3d 1252; Al-Amin v. Donald, 165 F. App'x 733 (11th Cir. 2006) (per curiam). In contrast, in close cases courts are less willing to dismiss claims for failure to allege a state-created liberty interest at the motion to dismiss stage of the proceedings. See Spaulding, 551 F. App'x 984; Wallace, 229 F. App'x at 830; Magluta, 375 F.3d at 1282-83; but see Morales v. Chertoff, 212 F. App'x 888, 889-90 (11th Cir. 2006) (per curiam) (holding that neither the Due Process Clause nor Florida statutes bestowed a liberty interest in prisoner's position as a law clerk); Smith v. Regional Dir. of Fla. Dep't of Corr., 368 F. App'x 9, 13

- 23 -

(11th Cir. 2010) (per curiam) (dismissing prisoner's claims because he failed to allege an atypical and significant hardship).

Upon review of the FAC, the Court cannot find as a matter of law that the combinations of hardship Whitsett alleges, particularly when imposed indefinitely, are not atypical and significant when compared to "the ordinary incidents of prison life." FDOC Rules[12] allow for five levels of custody: community, minimum, medium, close, or maximum.  R. 33-601.210(2)(a), Fla. Admin. Code.  They also require the prisoner's presence at a formal evaluation of his custody status at least annually to, among other things, provide "the inmate with an opportunity to become involved in assessing his progress and in stating his work and program interests."  R. 33-601.210(4), Fla. Admin. Code.  On this record, the Court cannot determine the category, if any, in which Whitsett's confinement falls.  Moreover, Whitsett alleges indefinite confinement in circumstances akin to one of the middle to higher levels of confinement allowed in Florida, which may implicate a liberty interest.

Notably, other courts recognize the length of an inmate's confinement or administrative segregation to be significant in the determination of whether a liberty interest is implicated.  See

---

[12] The state law applicable to inmate classifications and reclassifications, Fla. Stat. § 944.1905, provides the general guidelines that prison officials use to determine a prisoner's classification level.  Likewise, Rule 33-601.210, Florida Administrative Code, describes custody classification.

- 24 -

Hanrahan v. Doling, 331 F.3d 93, 97 (2d Cir. 2003) (noting that the length of disciplinary confinement "is one of the guiding factors in applying Sandin's 'atypical and significant hardship' test"); Arce v. Walker, 139 F.3d 329, 336-37 (2d Cir. 1998) (hardship of confinement offset by relative brevity); see also Jones, 155 F.3d at 814 (Gilman J., concurring) (noting that "relatively minor hardships can give rise to a liberty interest when imposed for an extended period of time"). To be sure, Whitsett's deprivation is not as great as a transfer to a supermax prison, as in Wilkinson, or a loss of "good time" credits, as in Wolff. However, his indefinite segregation with the attendant restrictions and loss of privileges may be both atypical and significant when compared to the state prisoner confinement scheme prescribed by State statute and rule. Thus, at the pleading stage, the Court cannot find as a matter of law that Whitsett's confinement does not impose an atypical and significant hardship "in relation to the ordinary incidents of prison life," Sandin, 515 U.S. at 484, 115 S.Ct. at 2300.

Further, the Supreme Court has cautioned, "administrative segregation may not be used as a pretext for indefinite confinement of an inmate. Prison officials must engage in some sort of periodic review of the confinement of such inmates." Hewitt v. Helms, 459 U.S. 460, 477 n.9, 103 S.Ct. 864, 874 n.9, 74 L.Ed.2d 675 (1983) (methodology abandoned, but holding affirmed, Sandin,

515 U.S. at 483 n. 5, 115 S.Ct. at 2300 n.5).   Thus, the possibility that Whitsett's exclusion from any formal review could be used as a pretext for indefinite confinement, cautions against dismissal at this stage of the proceedings.

Accordingly, construing Whitsett's pro se Fourth Amended Complaint liberally and affording him every reasonable inference, this Court finds that Whitsett's indefinite confinement, classification, restrictions, and loss of privileges, all taken together, may implicate a state-created liberty interest.   In denying Defendants' Motion, the Court notes that it does not have a complete picture of Whitsett's housing status, his classification, or the apparently intermediate program under which Whitsett was designated a PVP, much less a baseline of the ordinary incidents of prison life.   Thus, with a more complete set of facts, the Court may determine that no liberty interest is implicated, that due process was afforded to Whitsett, or that a lack of process was cured by a later procedural remedy.   However, viewing the facts in the light most favorable to Whitsett, as the Court must, the Court finds that Whitsett's Fourth Amended Complaint meets the Iqbal plausibility test.

Therefore, it is now

**ORDERED:**

1.   Defendants' Motion to Dismiss (Doc. #28) is **DENIED.**

2.    Defendants Parrish and Polk shall respond to the Fourth Amended Complaint by **October 20, 2015**.

**DONE AND ORDERED** at Jacksonville, Florida, this 30th day of September, 2015.


MARCIA MORALES HOWARD
United States District Judge


tc 9/29

c:

Steven R. Whitsett

Counsel of Record

- 27 -